UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| v. | § § | CRIMINAL NUMBER: H-14-578-S(2) |
| LYNDELL LEROY PRICE | § | |

## PLEA AGREEMENT OF LYNDELL LEROY PRICE

The United States of America, by and through Kenneth Magidson, United States Attorney for the Southern District of Texas, and Jimmy Sledge Jr., Assistant United States Attorney, and the defendant, Lyndell Leroy Price, and his counsel, Letitia Quinones, and pursuant to Rule 11(c)(1)(A) and 11(c)(1)(B) of the Federal Rules of Criminal Procedure state that they have entered into an agreement, the terms and conditions of which are as follows:

### The Defendant's Agreement

1. The defendant agrees to plead guilty to Count Ten of the Superseding Indictment charging the defendant with defrauding the United States through the filing of a false claim for an income tax refund in violation of Title 18, United States Code, Section 287. The defendant, by entering this plea, agrees that he is waiving any right to have the facts that the law makes essential to the punishment either: (i) charged in the indictment, (ii) proved to a jury, or (iii) proven beyond a reasonable doubt.

### Punishment Range

2. The statutory maximum penalty for each violation of Title 18, United States Code Section 287 is imprisonment of not more than five (5) years and a fine of not more than $250,000. Additionally, the defendant may receive after imprisonment a term of supervised release of up to

three (3) years for each violation. Title 18, U.S.C.§ 3559(a)(4) and § 3583(b)(2). The defendant acknowledges and understands that if he should violate the conditions of any period of supervised release which may be imposed as part of his sentence, then the defendant may be imprisoned for up to two (2) years without credit for time already served on the term of supervised release prior to such violation. Title 18, U.S.C. § 3559(a)(4) and § 3583(e)(3). Defendant understands that he cannot have the imposition or execution of the sentence suspended nor is he eligible for parole.

## Mandatory Special Assessment

3. Pursuant to Title 18 U.S.C. § 3013(a)(2)(A), immediately after sentencing, the defendant will pay to the Clerk of the United States District Court a special assessment in the amount of one hundred dollars ($100.00) per count of conviction. The payment will be by cashier's check or money order payable to the Clerk of the United States District Court, c/o District Clerk's Office, P.O. Box 61010, Houston, Texas 77208, Attention: Finance.

## Fine, Reimbursement and Restitution

4. The defendant understands that the Court may order restitution in any criminal case to the extent agreed upon by the parties. 18 U.S.C. § 3663(a)(3). Accordingly, the defendant agrees to pay, and consents to an order directing him to pay to the Internal Revenue Service ("IRS") – the agency of the United States that suffered economic loss from the defendant's fraudulent conduct – restitution in an amount to be determined by the U.S. District Court up to the full estimated actual loss suffered by the IRS of approximately **$129,964**. The defendant also agrees to include with each restitution payment: (i) his name, (ii) the docket number for this case, and (iii) a statement that the payment is being made pursuant to the Court's restitution order. The defendant further agrees to send a contemporaneous notice of each restitution payment to: **IRS-RACS, Attn: Mail Stop 6261,**

**Restitution, 333 W. Pershing Ave., Kansas City, MO 64108**. The defendant agrees to sign any forms that the IRS considers necessary to enable the IRS to make any assessment of the amounts paid in restitution, including but not limited to IRS Form 8821 entitled "Tax Information Authorization." Defendant agrees not to file any claim for refund of taxes, penalties and interest included as a component of restitution paid under this agreement.

5. The defendant understands and agrees that the Court is permitted to order defendant to pay a fine that is sufficient to reimburse the government for the costs of any imprisonment or term of supervised release.

6. The defendant agrees that any fine or restitution imposed by the Court will be due and payable immediately, and further agrees that he will not attempt to avoid or delay payment.

7. The defendant agrees to make complete financial disclosure by truthfully executing a sworn financial statement (Form OBD-500) prior to sentencing and on any one or more subsequent occasions requested by the United States until the financial obligations imposed by the defendant's judgment in this case have been fully paid.

## Immigration Consequences

8. If the defendant is not a citizen of the United States, a plea of guilty may result in deportation, removal, exclusion from admission to the United States, or the denial of naturalization. A plea of guilty may also result in the defendant being permanently barred from legally entering the United States after being deported, removed, and/or excluded. The defendant acknowledges and agrees that his attorney has advised him of potential immigration consequences resulting from his plea of guilty.

## Cooperation

9. Defendant agrees to persist in his plea of guilty through sentencing and understands and agrees that this plea agreement carries NO potential whatsoever for a motion for departure under Section 5K1.1 of the Sentence Guidelines.

## Waiver of Appeal

10. The defendant is aware that he has the right to appeal the conviction and sentence under 28 U.S.C. § 1291 and 18 U.S.C. § 3742. The defendant knowingly and voluntarily agrees to waive the right to appeal his conviction, sentence and any restitution order. The defendant is also aware that 28 U.S.C. § 2255 affords the right to contest or "collaterally attack" a conviction, sentence and restitution order after the conviction, sentence and restitution order have become final. The defendant knowingly and voluntarily waives the right to contest his conviction, sentence and restitution order by means of any post-conviction proceeding, including but not limited to any proceedings authorized by Title 28, United States Code, Section 2255 except that the defendant does not waive the right to raise a claim of ineffective assistance of counsel on direct appeal, if otherwise permitted, or on collaterial review in a motion under Title 28, United States Code, Secction 2255. If the defendant files, or instructs his attorney to file, any post-conviction proceeding attacking his conviction, sentence and restitution order, the defendant understands and agrees that the United States will seek specific performance of the waivers in this plea agreement of his right to appeal his conviction, sentence and restitution order and his right to file any post-conviction proceedings attacking his conviction, sentence and restitution order.

11. In exchange for this Agreement with the United States, the defendant waives with respect to all transactions incorporated within the above-captioned superseding indictment and the

relevant conduct underlying the defendant's United States Guidelines Sentencing range all defenses based on venue, speedy trial under the Constitution and Speedy Trial Act, and the statute of limitations with respect to prosecution of the transactions underlying the above-captioned Superseding Indictment that is not time barred on the date this Agreement is signed so that the United States may reinstate prosecution of the defendant: (a) if he violates any provision of this Agreement, (b) if his plea is later withdrawn, or (c) if his conviction is later vacated for any reason.

12. In agreeing to these waivers, Defendant is aware that a sentence has not yet been determined by the Court. The defendant is also aware that any estimate of the possible sentencing range under the Sentencing Guidelines that he may have received from his counsel, the United States or the Probation Office, is a prediction, not a promise, **did not induce his guilty plea**, and is not binding on the United States, Probation Office or Court. The United States does not make any promise or representation concerning what sentence the defendant will receive. Defendant further understands and agrees that the Sentencing Guidelines are "effectively advisory" to the Court. *United States v. Booker*, 543 U.S. 220 (2005). Accordingly, Defendant understands that although the Court must consult the Sentencing Guidelines and must take them into account when sentencing Defendant, the Court is not bound to follow the Sentencing Guidelines nor sentence Defendant within the calculated guideline range.

13. The defendant understands and agrees that any and all waivers contained in this plea agreement are made in exchange for the concessions made herein by the United States.

## The United States's Agreements

14. The United States agrees to each of the following:

(a) The defendant's relevant conduct was undertaken in concert jointly with others with an intention to cause foreseeable aggregate economic harm for sentencing purposes of **approximately $247,639** within the meaning of Section 2B1.1(b)(1) of the <u>United States Sentencing Commission's Guidelines Manual as amended effective November 1, 2015</u> ("U.S.S.G.") with the parties remaining free to argue the applicability of other sections of the U.S.S.G.; the defendant understands, however, that any agreement between the United States and the defendant regarding his relevant conduct is not binding upon the U.S. Probation Office or the U.S. District Court;

(b) If the United States District Court determines that the defendant's offense level is 16 or greater and it further determines that the defendant qualifies for an adjustment under U.S.S.G. Section 3E1.1(a), the United States will move that defendant receive an additional one-level downward adjustment based on the timeliness of the plea;

(c) The United States will not seek an upward departure from the applicable guideline range as finally determined by the Court;

(d) The United States will not oppose a sentence at the low-end of the applicable guideline range as finally determined by the Court; and

(e) If the Court accepts this plea agreement and the defendant fully complies with it and persists in his plea of guilty through sentencing and entry of judgment, the United States will dismiss the remaining counts of the Superseding Indictment after sentencing and will not charge defendant with any further offenses in connection with the filing of federal income tax returns for calendar/tax years 2010 through 2012 (the years covered by the tax loss stipulation and restitution agreed to herein).

## United States' Non-Waiver of Appeal

15. The United States reserves the right to carry out its responsibilities under the United States Sentencing Guidelines. Specifically, the United States reserves the right:

(a) to bring its version of the facts of this case, including its evidence file and any investigative files, to the attention of the U.S. Probation Office in connection with that office's preparation of a presentence report;

(b) to set forth or dispute sentencing factors or facts material to sentencing;

(c) to seek resolution of such factors or facts in conference with defendant's counsel and the U.S. Probation Office;

(d) to file a pleading relating to these issues, in accordance with U.S.S.G. Section 6A1.2 and with Title 18, U.S.C. Section 3553(a); and,

(e) to appeal the sentence imposed or the manner in which it was determined.

## Sentence Determination

16. Defendant is aware that the sentence will be imposed after the Court's consideration of the United States Sentencing Guidelines and Policy Statements, which are only advisory, as well as the provisions of Title 18, U.S.C. § 3553(a). Defendant nonetheless acknowledges and agrees that the Court has authority to impose any sentence up to and including the statutory maximum set for the offense to which defendant pleads guilty and that the sentence to be imposed is within the sole discretion of the sentencing judge after the Court has consulted the applicable U.S. Sentencing Guidelines. Defendant understands and agrees that the parties' positions regarding the application of the U.S. Sentencing Guidelines do not bind the Court and that the sentence imposed is within the discretion of the sentencing judge. If the Court should impose any sentence up to the maximum established by statute, or should the Court order any or all of the sentences imposed to run consecutively, defendant cannot, for that reason alone, withdraw a guilty plea and will remain bound to fulfill all of his obligations under this plea agreement.

## Rights at Trial

17. Defendant represents to the Court that he is satisfied that his attorney has rendered effective assistance. Defendant understands that by entering into this agreement, he surrenders certain rights as provided in this plea agreement. Defendant understands that the rights of a defendant include the following:

(a) If defendant persisted in a plea of not guilty to the charges, defendant would have the right to a speedy jury trial with the assistance of counsel. The trial may be conducted by a judge sitting without a jury if the defendant, the United States, and the court all agree;

(b) At a trial, the United States would be required to present witnesses and other evidence against the defendant, who would have the opportunity to confront those witnesses and his attorney would be allowed to cross-examine them. In turn, the defendant could, but would not be required to, present witnesses and other evidence on his own behalf. If a witnesses for the defendant declined to appear voluntarily, he could require their attendance through the subpoena power of the court; and

(c) At a trial, defendant could rely on a privilege against self-incrimination and decline to testify, and no inference of guilt could be drawn from such refusal to testify. However, if the defendant wanted to, he could testify on his own behalf.

### Factual Basis for Guilty Plea

18. Defendant is pleading guilty because he is guilty of the charge set forth in Count Ten of the Superseding Indictment. If this case were to proceed to trial, the United States could prove each element of the offense beyond a reasonable doubt. The following facts, among others would be offered to establish the defendant's guilt:

**The Scheme:** Between on or about October 12, 2011 and and on or about July 1, 2013 in the Houston Division of the Southern District of Texas, Lyndell Leroy Price acted together with at least one other person in the execution of a fraudulent income tax refund scheme. The scheme resulted in the submission of dozens of false federal income tax returns to the Internal Revenue Service ("IRS") seeking fraudulent refunds that were routed to ATM/debit card accounts and withdrawn through transactions at local banks and with local merchants. The scheme involved the filing of income tax refund claims in the names of dozens of people who either did not know any refund claim was filed on their behalf because their identities had been stolen or they knew that income tax refund claims would be submitted on their behalf but they either had provided no financial information whatsoever or had provided financial information expecting that a bona fide tax return would be filed on their behalf. Tax returns filed in the course and scope of the scheme falsely reported that the indicated taxpayers were "barbers" who had earned no wages but had received tens of thousands of dollars of dividend income from "supplies", who had supposedly – but not actually – paid thousands of dollars of withholding taxes on that dividend income, and who were entitled to receive to a refund of all of the fictitious withholding taxes because the amount of bogus dividend income was not high enough to trigger an income tax liability.

**Price's role:** Lyndell Leroy Price's role in the scheme was to gather and provide names, social security numbers and birth dates (hereinafter "identity information") for whom false refund claims were filed, to provide mailing addresses to which the ATM/debit cards were mailed, to collect the ATM/debit cards when they arrived at the addresses he provided, and to assist in the withdrawal of and then share in the refunds withdrawn from the ATM/debit card accounts linked to the fraudulent refund claims via ATM/debit card transactions with local banks and merchants. Price even introduced his own identity information into the scheme resulting in the submission of a false refund claim on his behalf.

**Count 10:** Between October 12, 2011 and October 14, 2011, a 2010 U. S. Individual Income Tax Return–Form 1040A was filed electronically with the IRS for a person whose first name and last initial are "Ronald L." (who is more fully is described in Count 10 and Overt Act 1 of Count 1 of the Superseding Indictment) with a stated occupation of "barber," ordinary dividend income from "supplies" of approximately $18,500, a "home address" on Ozark Street (more fully described in Overt Act 1 of Count 1 of the Superseding Indictment) and claiming that "Ronald L." was due an income tax refund of approximately $5,610. Price lived at this Ozark Street address property, which is near the Bank of America and Chase Bank branches through which fraudulent refunds were withdrawn by Price and another schemer acting together with him via ATM/debit card accounts established for "Ronald L." (Count 11), Dayvyon G." (Counts 16 & 17), "Christopher G." (Counts 18 & 19), and others whose identity information was introduced into the scheme by Price and exploited in the refund fraud scheme described herein. In 2010, "Ronald L." was not a "barber," earned no dividend income, paid no withholding taxes, and was not entitled to any income tax refund from the IRS. On October 19, 2011, Price placed a call from his telephone number (more fully described in Overt Act 3 of Count 1 of the Superseding Indictment) to the debit card provider in connection with the creation of an ATM/debit card account for the deposit of the requested LaPoint 2010 income tax refund. On October 28, 2011, the IRS electronically transferred from the U.S. Treasury and deposited the requested income tax refund of approximately $5,610 into a debit card account in the name of "Ronald L."(more fully described in Overt Act 4 of Count 1 of the Superseding Indictment). Withdrawals from that account commenced that same day and continued until the $5,610 refund was fully withdrawn on October 31, 2011.

**Count 13:** Between October 14, 2011 and October 17, 2011, a 2010 U. S. Individual Income Tax Return–Form 1040A was filed electronically with the IRS for a person whose first name and last initial are "Robert M." (who is more fully is described in Count 13 and Overt Act 2 of Count 1 of the Superseding Indictment) with a stated occupation of "barber," ordinary dividend income from "supplies" of approximately $17,850, a "home address" on Isabella Street (more fully described in Overt Act 2 of Count 1 of the Superseding Indictment) and claiming that "Robert M." was due an income tax refund of approximately $5,660. This Isabella Street property was and is a duplex apartment in which Price has lived and it was and is located across the street from the home of a member of Price's family. In 2010, "Robert M." was not a "barber," earned no dividend income, paid no withholding taxes, and

was not entitled to any income tax refund from the IRS. Nonetheless, on or about October 28, 2011, the IRS electronically transferred from the U.S. Treasury and deposited the requested income tax refund of approximately $5,660 into a debit card account in the name of "Robert M." Some days/weeks later, Price saw "Robert M." and told "Robert M." that he/Price knew the person who had filed the tax return and offered to give "Robert M." a ride to get his refund but "Robert M." had lost his wallet and needed to get an I.D. Price offered to give "Robert M." a ride when he had acquired a new I.D. "Robert M." called Price a few times after that, but Price quit answering his phone and "Robert M." never received any money. Withdrawals of the fraudulently obtained "Robert M." 2010 tax refund began on December 31, 2011 and continued until it was fully withdrawn on January 5, 2012.

**Count 14:** Between January 5, 2012 and January 13, 2012, a 2011 U. S. Individual Income Tax Return–Form 1040A was filed electronically with the IRS for "Robert M." (who is more fully described in Count 14 and Overt Act 7 of Count 1 of the Superseding Indictment) with a stated occupation of "barber," ordinary dividend income from "supplies" of approximately $22,897, a "home address" on Alabama Street (more fully described in Overt Act 7 of Count 1 of the Superseding Indictment) and claiming that "Robert M." was then due an income tax refund of approximately $6,560. This Alabama Street property was and is occupied by someone known to Price and was and is located near Isabella Street home of a member of Price's family. In 2011, "Robert M." was not a "barber," earned no dividend income, paid no withholding taxes, and was not entitled to any income tax refund from the IRS. Nonetheless, on or about January 24, 2012, the IRS electronically transferred from the U.S. Treasury and deposited the requested income tax refund of approximately $6,560 into the same above-described debit card account in the name of "Robert M." (more fully described in Overt Act 12 of Count 1 of the Superseding Indictment). On January 25, 2012, Price placed a call from his telephone number (more fully described in Overt Act 13 of Count 1 of the Superseding Indictment) to the debit card provider concerning the refund to be deposited. Withdrawals from that account commenced the following day and continued until the $6,560 refund was fully withdrawn.

**Actual/Intended Loss:** Price knew, understood, intended and agreed that all of the identification information and addresses he obtained and introduced into the scheme – without any of the personal, income, or other financial information obviously required to submit a legitimate income tax return – would be, and were, used to seek and obtain fraudulent refunds and he intended to, and did, share in the fraudulent refunds sought and obtained. Even though the IRS was able to detect the scheme in its latter stages and prevent losses on a significant number of claims, Price provided identity information and\or addresses with regard to dozens of false 2010-12 refund claims, including one in his own name, which were intended to generate fraudulent refunds of approximately $247,369 and in fact, did generate fraudulent refunds paid from the National Treasury totaling approximately $129,964 – in which Price shared.

In violation of Title 18, United States Code, Sections 287 and 2.

## Determination and Resolution of Tax, Penalty and Interest Obligations

20. Defendant agrees that the tax loss figures above for relevant conduct and restitution in this criminal case are not binding on the IRS for civil purposes. Defendant understands that the IRS may civilly audit his personal U.S. Individual Income Tax Returns for any year, including 2011 and 2012, and may seek additional taxes as well as penalties and interest for that and other years. Defendant agrees and understands that this plea agreement, in which defendant pleads guilty to submitting false income tax refund claims for others does not and cannot resolve any civil tax liabilities on defendant's own U.S. Individual Income Tax Return(s) or those of anyone else. Defendant agrees that the amounts to be paid in restitution in this case apply to tax losses on returns submitted to the IRS for others and cannot be applied to any taxes, penalties, or interest that defendant may owe. Defendant agrees not to file any claim for refund of any amount ordered paid as restitution in this case. Defendant further agrees not to file any action in a U.S. District Court, in the U.S. Tax Court, or in the U.S. Claims Court seeking a refund, offset, or other recovery of the amounts ordered or paid in restitution in this case. Defendant agrees to cooperate fully with the IRS in determining his own income tax liabilities as well those of others in whose names he submitted false income tax refund claims. Defendant agrees to obtain and make all books, records, and documents available to the IRS for use in computing the civil tax liabilities of any taxpayer. Nothing in this plea agreement shall limit the IRS in its lawful examination, determination, assessment, or collection of any taxes, penalties, or interest due for any time period or taxpayer. Defendant agrees that this plea agreement and any judgment, order, release, or satisfaction issued in connection with this plea agreement will not satisfy, settle, or compromise defendant's obligation to the pay any civil liability, including additional taxes, penalties, or interest.

## Breach of Plea Agreement

21. If defendant should fail in any way to fulfill completely all of the obligations under this plea agreement, the United States will be released from its obligations under the plea agreement and the defendant's plea will stand. If at any time defendant violates his conditions of bond/release; retains, conceals, or disposes of assets in violation or hindrance of this plea agreement; or knowingly withholds information or is otherwise not completely truthful with the U.S. Probation Office, the Court or the United States, then the United States may move the Court to reinstate prosecution of the dismissed counts and may also seek the maximum statutory sentence for the offense of conviction. Any information and documents disclosed by defendant prior or subsequent to this plea agreement, and all leads derived therefrom, can be used against defendant in any prosecution and at sentencing notwithstanding any U.S.S.G. Section 1B1.8 agreement.

22. Whether the defendant has breached any provision of this plea agreement shall be determined solely by the United States through the United States Attorney's Office, whose judgment in that regard is final.

## Complete Agreement

23. This written plea agreement, consisting of fourteen (14) pages, including the attached addendum of defendant and his attorney, constitutes the complete plea agreement between the United States, defendant, and his counsel. No promises or representations have been made by the United States except as set forth in writing in this plea agreement. Defendant acknowledges that no threats have been made against him and that he is pleading guilty freely and voluntarily because he is guilty.

Any modification of this plea agreement must be in writing and signed by all parties.

Filed at Houston, Texas, on this 18th day of March, 2016.

_____
LYNDELL LEROY PRICE
Defendant

Subscribed and sworn to before me on this 18th day of March, 2016.

DAVID J. BRADLEY
CLERK OF COURT

By: _____
Deputy United States District Clerk

APPROVED:

KENNETH MAGIDSON
UNITED STATES ATTORNEY

By: _____
Jimmy Sledge Jr.
Assistant United States Attorney
Southern District of Texas
1000 Louisiana, Suite 2300
Houston, Texas 77002
TEL: 713/567-9735
Email: jimmy.sledge@usdoj.gov

QUINONES & ASSOCIATES P.L.L.C.

_____
Letitia Quinones
Attorney for Lyndell Leroy Price
1207 South Shepherd
Houston, Texas 77019
TEL: 713-481-7420
Email: quinoneslaw@yahoo.com